

# THE ATTORNEY GENERAL
## OF TEXAS

GROVER SELLERS

AUSTIN 11, TEXAS

XXXXXXXXXXXXXXXXXXXXXXXXX
**ATTORNEY GENERAL**

Honorable Walter F. Woodul
Member, Board of Regents
Stephen F. Austin State Teachers College
Chronicle Building
Houston 2, Texas

Dear Mr. Woodul:

Opinion No. 0-6911
Re: Power of Board of Regents to
make long term lease of College
land at Nacogdoches for purpose
of acquiring athletic and rec-
reational facilities for Stephen
F. Austin State Teachers College

We are in receipt of your opinion request which
reads as follows:

"At the Stephen F. Austin State Teachers
College is no adequate football plant or athletic
field. What the college has been using is worse
than nothing and does not even come up to the
lowest grade school athletic field. Neither does
the college have a swimming pool or tennis courts.
Due to the fact that the college has none of
these recreational facilities, the attendance is
not what it ought to be and makes it a very high
cost educational institution.

"At the request of the Board of Regents, I
went to Nacogdoches about three weeks ago and
called upon the local citizens for help. The con-
templated improvements will cost about $150,000.00.
The local citizens feel that the funds should be
raised by taxation; that the city should issue
bonds and build these improvements. The city can-
not do this unless it owns the land or has a long
term lease on the land on which the improvements
are built. The price of local land adjacent to
the college is prohibitive for the city to acquire
it. If the Regents have the power, they are will-
ing to make a long term lease to the city whereby
the city will put up the improvements on this land
and the college have use thereof, at a very small
rental, and further providing that as the school

grows, it would have an option to pay the city
for the improvements and cancel the lease.

"I see no way to get these improvements
unless it is done this way.  Now, the Regents
are given control of the management of the
school but the question has arisen in my mind
as to whether that includes the right of the
Regents to make a long term lease, which is
really for the benefit of the school more than
it is for the city, the Regents having the
power to terminate the lease at any time by
paying off the cost of the improvements.  Of
course, the Regents, under contract, would not
lose control of the land that they are leasing,
as it would at all times during the term of
the lease be a facility for the college.

"So that we don't get the city to issue
a lot of bonds and then find out that we cannot
make this long term lease, would you mind having
one of the gentlemen in your office to give us
an opinion upon this matter.  I hope he will
construe the powers liberally and I think the power
to control the school property would reasonably
carry with it the power to make this advantageous
lease to the City, which is in effect merely helping
to get this college on its feet."

We will discuss your questions under three subdi-
visions, viz:

1.  Power of the Board of Regents to make long
term lease with option to purchase improvements.

2.  Authority of the City of Nacogdoches to issue
tax bonds for playground purposes.

3.  Authority of City to construct improvements on
leased land.

(1)  Relative to the power of the Board to make a
long term lease, we quote from Article 2603c, certain sections
and parts of sections, as follows:

"Art. 2603c, Sec. 1

"That the Board of Regents of the University of
Texas and its branches, and the Board of Directors
of the Agricultural and Mechanical College, and its

branches, and the Board of Directors of Texas
Technological College, and the Board of Regents
of the State Teachers College and the Board of
Regents of the Texas State College for Women, and
the Board of Directors of the College of Arts and
Industries are hereby severally authorized and
empowered to construct or acquire through funds
or loans to be obtained from the Government of the
United States, or any agency or agencies thereof,
created under the National Recovery Act, or other-
wise created by the Federal Government or from
any other source private or public, without cost
to the State of Texas, and accept title, subject to
such conditions and limitations as may be prescribed
by each of said Boards, dormitories, kitchens and
dining halls, hospitals, libraries, student activity
buildings, gymnasia, athletic buildings and stadia,
and such other buildings as may be needed for the good
of the institution and the moral welfare and social
conduct of the students of such institutions when
the total cost, type of construction, capacity of
such buildings, as well as the other plans and speci-
fications have been approved by the respective
governing boards; . . .

"Sec. 4.  Each of said boards is hereby
authorized and empowered to enter into contracts
with municipalities or school districts for the
joint construction of museums, library buildings,
or such other buildings as may be deemed necessary.

"Sec. 6.  Upon the acquisition, construction,
or erection of such building or buildings, absolute
control and management shall vest in the respective
board of the institution of the building so constructed
or acquired, subject to any condition that may be
provided in the grant.

"Sec. 7.  It is further provided that land
owned by the State or any of said institutions
may be used as building sites and ground for such
buildings acquired under the provisions of this Act.

"Sec. 9.  Provided further that each of said
boards may make such contracts as may be necessary
to properly carry out the provisions of this Act."

We think that the emergency clause of the Bill
originally enacting Article 2603c stated the purpose or ob-
ject of all legislation on this subject when it provided

"the fact that the institutions of higher learning in Texas
are in urgent need of buildings that are for the good of the
institutions and the moral welfare and social conduct of the
students of such institutions, and the fact that there is not
sufficient money in the Treasury of the State of Texas with
which to acquire such buildings."

In furtherance of this broad purpose, the Legisla-
ture in an amendment to the original act inserted Section 4
as above quoted. We are of the opinion and can see of no
other reason for enacting Section 4 except for the purpose
of enabling the Board of Regents and municipalities to enter
into contracts for the benefit of both agencies. The Legis-
lature probably conferred the authority in broad terms know-
ing that any such contracts would be based on different facts
or circumstances at each State institution. The Legislature
enacted Section 4 knowing that in some cases the municipality
would furnish the land and the State and Institution would
furnish the money for the building, or, as in this case, the
State would furnish the land and the municipality would fur-
nish the money for the buildings, and in some cases the
municipality may furnish part of the land and part of the
money and the institution furnish part of the land and part
of the money. In other words, the Legislature conferred broad
authority on the Board of Regents to enter into contracts
with municipalities to engage in a joint construction enter-
prise which the board considered necessary and beneficial to
said institution.

Article 2647, subsection 1, Vernon's Annotated
Civil Statutes grants the Board of Regents of the State
Teachers Colleges with "the general control and management
of all State Teachers Colleges."

In Christopher v. City of El Paso, 98 S. W. (2)
394, 399, the Court had before it the consideration of Article
1269h, which authorizes cities to acquire and construct air-
ports and after such acquisition and construction provides
that the city shall have control and management of the same.
The City of El Paso under its statutory authority to control
and manage airports leased the city airport to an individual.
The authority of the city to lease the airport was raised
in said case and on page 399 of the opinion the Court stated:

"Upon the question of agency appellants
take the position that under Article 1269h
(Vernon's Ann. Civ. St.) and Section 71 of the
City Charter, the city was bound to retain con-
trol and management of the airport and to per-
form the duties imposed by the statute. While

it is true that both the statute and charter pro-
vide that the airport shall be under the manage-
ment and control of the governing body of the
city and that the city shall have the management
and control of the property belonging to it, we
find nothing in either the statute or the charter
which would in any way prohibit the leasing of the
property acquired for airport purposes and it is
our opinion that the cited provisions can have no
bearing upon the question involved." (Under-
scoring ours).

This is not a case in which the school is relinquish-
ing control of a part of its campus to private individuals
for private purposes or purposes foreign to the school. On
the contrary, this portion of the campus is intended to be
improved by the city for public purposes for the benefit of
students at the College as well as other residents of the
City of Nacogdoches. We cannot say that this joint plan of
the City and College for improving the campus for the public
will amount to an abuse of discretion on the part of the re-
gents or by beyond the scope of their statutory powers of
management and control. See City of Port Arthur v. Young
(Civ. App.) 37 S.W. (2d) 385, writ refused. The test as we
see it is whether or not the interests of the public will be
subserved.

You are respectfully advised that it is the opinion
of this department that the Board of Regents of the State
Teachers College is authorized to lease the land in question
to the City of Nacogdoches under a long-term lease for the
purpose of jointly constructing buildings considered necessary.

(2)  Does the City have power to issue tax bonds
for playgrounds, etc. ?

We have been informed that the City of Nacogdoches
is a "home rule" city, operating under its own charter. We
have not been furnished with a copy of the city charter and
are not advised as to whether the city has adopted all of the
powers conferred by the statutes relative to home rule cities,
so we do not propose in this opinion to construe the charter
powers of the City of Nacogdoches but only the statutory powers
relating to home rule cities. We quote from two paragraphs
of Article 1175:

"Sec. 10.  The power to control and manage the
finances of any such city; to prescribe its fiscal year
and fiscal arrangements; the power to issue bonds upon
the credit of the City for the purpose of making per-

manent public improvements or for other public pur-
poses in the amount and to the extent provided by such
charter and consistent with the Constitution of this
State; ...."

"Sec. 15.  To have the power to appropriate pri-
vate property for public purposes whenever the govern-
ing authorities shall deem it necessary to take any
private property within or without the city limits for
any of the following purposes; city halls, police sta-
tions, jails, calaboose, fire stations, libraries,
school houses, high school buildings, academies, hos-
pitals, sanitariums, auditoriums, market houses, re-
formatories, abattoirs, railroad terminals, docks,
wharves, warehouses, ferries, ferry landings, eleva-
tors, loading and unloading devices, shipping facil-
ities, piers, streets, alleys, parks, highways, bou-
levards, speedways, playgrounds, sewer systems, storm
sewers, sewerage disposal plants, drains, filtering
beds and emptying grounds for sewer systems, reservoirs,
water sheds, water supply sources, wells, water and
electric light systems, gas plants, cemeteries, cre-
matories, prison farms, and  to acquire lands within
and without the city for any other municipal purposes
that may be deemed advisable.  The power herein granted
for the purpose of acquiring private property shall
include the power of the improvement and enlargement
of the water work, including water supply, riparian
rights, stand pipes, water sheds, the construction of
supply reservoirs, parks, squares and pleasure grounds,
public wharves, and landing places for steamers and
other crafts, and for the purpose of straightening or
improving the channels of any stream, branch or drain,
or the straightening, widening or extension of any
street, alley, avenue or boulevard.  The power of em-
inent domain hereby conferred shall include the right
of the governing authority, when so expressed, to
take the fee in the lands so condemned and such power
and authority shall include the right to condemn pub-
lic property for such purposes."

The Supreme Court of Texas in Lewis v. City of Fort
Worth, 89 S. W. (2d) 975, in construing the charter of Ft.
Worth, the charter having similar wording as the above-
quoted statutes, held that the city of Fort Worth had au-
thority to spend money raised by the sale of bonds for the
purpose of constructing, equipping and improving pleasure
grounds, parks and playgrounds.

If the charter of the City of Nacogdoches authori-

zes the City to issue bonds for constructing, equipping and improving pleasure grounds, parks, and playgrounds, then, based upon the above referred to statutes and decision, it is the opinion of this department that said City would be authorized to issue tax bonds for said purposes.

(3) Does the City of Nacogdoches have the power to construct permanent improvements on leased land?

McQuillan on Municipal Corporations
"Sec. 1215. When necessary to promote its public purposes the municipal corporation usually is empowered to become the lessee of real property for the benefit of its inhabitants. Power to acquire property implies the power to lease, or to enter in contract to purchase. . . ."

43. Corpus Juris. p. 1329: "A municipal corporation may take a lease of real property for the legitimate corporate purpose, provided charter and statutory provisions on the subject are complied with."

In City of Mission v. Richards, 274 S.W. 269, the Court of Civil Appeals held that the City of Mission had authority to lease a building for a city hall and fire station. We have been unable to find any statute or any decision of the courts of this State prohibiting a city from leasing land for municipal purposes. We do not think it necessary in this opinion to hold that a Texas municipality has authority to construct permanent improvements on leased land, since we have a statute conferring authority on the Board of Regents of the State Teachers College and municipalities to enter into contracts for the joint construction of certain permanent improvements, and we are basing our opinion on this question solely on said statute. Construing the above authorities and especially Section 4 of Article 2603c, this Department is of the opinion that the City of Nacogdoches has authority to enter into a long term lease contract with the Board of Regents of the State Teachers College and to construct, equip and improve pleasure grounds, parks, and playgrounds on said leased land.

Yours very truly

ATTORNEY GENERAL OF TEXAS


By s/R. J. Long
R. J. Long
Assistant

RJL:BT:wc


APPROVED DEC  12,  1945
s/Carlos C. Ashley
FIRST ASSISTANT
ATTORNEY GENERAL

This Opinion Considered and Approved in Limited Conference